# Exhibit A

VP-12/08/2011

**CT Corporation**

**Service of Process Transmittal**
12/06/2011
CT Log Number 519599838

**TO:** Vicki Baue, General Counsel
COSI, Inc.
1751 Lake Cook Road, Suite 650
Deerfield, IL 60015

**RE:** **Process Served in Virginia**

**FOR:** COSI, Inc. (Domestic State: DE)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Catherine Moore, Pltf. vs. Cosi, Inc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | Arlington County Circuit Court, VA<br>Case # 013CL1100251300 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - Alleges hostile work environment and sexual harassment |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Glen Allen, VA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/06/2011 at 08:30 |
| **JURISDICTION SERVED :** | Virginia |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service |
| **ATTORNEY(S) / SENDER(S):** | S. Sarah Shah<br>3 Washington Circle NW<br>Suite 102<br>Washington, DC 20037 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Standard Overnight , 797813490003<br>Email Notification, Vicki Baue vbaue@getcosi.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Tinika Baylor |
| **ADDRESS:** | 4701 Cox Road<br>Suite 301<br>Glen Allen, VA 23060 |
| **TELEPHONE:** | 804-217-7255 |

Page 1 of 1 / AC

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# COMMONWEALTH OF VIRGINIA



ARLINGTON CIRCUIT COURT
Civil Division
1425 NORTH COURTHOUSE RD
ARLINGTON  VA
(703) 228-7010

Summons

To: COSI INC
SERVE: CT CORPORATION
SYSTEM
REGISTERED AGENT
4701 COX ROAD, STE. 301
GLEN ALLEN VA 23060

Case No. 013CL11002513-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Friday, December 02, 2011

Clerk of Court: PAUL F. FERGUSON

by _____
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:

**VIRGINIA:**

## IN THE CIRCUIT COURT OF ARLINGTON COUNTY

Catherine Moore                    )
(Indigent Client)                  )
2100 Maryland Avenue               )
Apartment # 4                      )
Washington DC 20002                )
                                   )
    c/o S. Sarah Shah              )
    3 Washington Circle NW         )
    Suite 102                      )
    Washington DC 20037            )
                                   )
        Plaintiff           )
                                   )
                                   )
v.                                 )
                                   )
                                   )
Cosi, Inc.                         )
1751 Lake Cook Road                )
Deerfield, IL 60015                )
                                   )
   Serve: Vicki Baue, Esq.        )
        1751 Lake Cook Road    )
        Ste. 600               )
        Deerfield, Il 66015    )
                                   )
        Defendant           )
                                   )

**RECEIVED**

NOV  4 2011

PAUL FERGUSON, CLERK
Arlington County Circuit Court
by_____Deputy Clerk

Complaint No. 11- 2513

**JURY TRIAL REQUESTED**

## CIVIL COMPLAINT

      COMES NOW the plaintiff, Catherine Moore, by counsel moves this Court for entry of

judgment in her favor and against the defendant, Cosi Inc. and in this support of this complaint

alleges as follows:

## Nature of Action

1.      This is an action at law arising our of discrimination on the basis of hostile work environment sexual harassment, quid pro quo discrimination, and retaliation in the course of employment of plaintiff and certain common law claims.

2.      This action states federal claims against defendant for discrimination on the basis of hostile work environment, sexual harassment, quid pro quo discrimination and retaliation, all under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.

## Parties

3.      Plaintiff Catherine Moore is a female and a resident of the District of Columbia.

4.      Ms. Moore was an employee of Cosi Inc. store #19 in Clarendon-Courthouse in Arlington, Virginia, until December 29, 2009.

5.      Cosi, Inc. is an employer within the meaning of 42 U.S.C. §2000e(b).

6.      Defendant Cosi, Inc. is a Corporation with its principal place of business in Deerfield, Illinois, and duly authorized to do business in the Commonwealth of Virginia and the District of Columbia.

7.      Cosi Inc. had on information and belief, more than 500 employees in each of 20 or more calendar weeks since January 1, 2007 in Washington DC metropolitan area within the meaning of 42 U.S.C. §1981a(b)3(D).


## Jurisdiction and Venue

8.      The Court has jurisdiction over this matter, because the events took place in this Circuit.


9.      This Court has jurisdiction pursuant to  28 U.S.C. §1338 and 1332 , over Ms. Moore's claims of sex discrimination in violation of Ms. Moore's equal protection rights under the Fourteenth Amendment and her common law claims. This Court alshas jurisdiction over Ms. Moore's claim under Title VII of the Civil Rights Act of 1964, as amended, pursuant to 42 U.S.C.  §2000e-5(f)(3).


10.      Cosi Inc. regularly conducts affairs and business activities throughout eastern Virginia and did so at all times alleged herein.


11.      The causes of action arose from the defendant's acts and omissions in Virginia.

12.     Unlawful employment practices committed by the defendant occurred in this judicial district. The defendant does business in this judicial district.

13.     Venue over the claims of Ms. Moore under Title VII is proper in this Court pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §1391(b).

**Summary of Facts**

1.  In April 2004, Catherine Moore was hired by Cosi store #19 in Clarendon-Courthouse in Arlington, Virginia as an oven line baker.

2.  Ms. Moore advanced in her work responsibilities and hence worked as a barista as well as a sandwich-maker.

3.  In early 2007, Ms. Moore was promoted to shift manager. Her job tasks included training new employees and handling additional responsibilities at all the food service stations including handling large catering orders.

4.  Ms. Moore worked approximately forty hours a week for minimum wage.

5.  Ms. Moore was well known by the customers for her hospitality, exceptional customer service skills and initiative. Several customers visited the store on a regular basis because of her skill in making the "perfect cup of chai tea" or specialty coffee. She knew many

customers by name and would often take the time to greet them and chat for a moment when the store was not busy. Ms. Moore always worked toward improving sales by recommending additional pastries as well as new items such as holiday specials.

6. On or about February 2009, Ms. Moore was sexually harassed by Robert Bates, who was one of the managers at her store. Mr. Bates sexually harassed Ms. Moore by making explicit unwelcome sexual advances toward her in the store, making inappropriate sexual comments and inappropriately physically touching Ms. Moore, and soliciting her for sex by asking her to "go down to the basement" with him. Ms. Moore always refused to have sexual relations with Mr. Bates.

7. On about February or March of 2009, she informed the district manager, Turan Turgan, of the sexual harassment. She told Mr. Turgan that Mr. Bates tried to solicit sexual favors from her, and that upon her refusal, he regularly cursed at her, made her run personal errands such as getting his lunch, and repeatedly threatened to fire her. Although Mr. Turan was apprised of Mr. Bates's inappropriate behavior, Mr. Bates was neither terminated from his job nor reprimanded.

8. On June 14, 2009, Mr. Bates was discovered and photographed by another manager, Mohammad, having sexual relations with a subordinate female employee with whom he regularly had sexual relations within the storage room of the basement of the restaurant.

9. On or about June 15, 2009, members of Cosi's HR came to the store and interviewed Hassan, an assistant manager, Mohammad, and a few other male employees about what had happened. They did not interview Ms. Moore or the other female employees who were present. When HR interviewed Hassan Torabipour, he answered their questions and expressed concern over Mr. Bates's sexual behavior at work.

10. Hassan informed HR that Mr. Bates would solicit sex from virtually all the female employees during their shift. He was known for saying, "Let's go to the basement," which was understood by both male and female employees as solicitation to have sex in the basement storage area.

11. Hassan also informed HR of Mr. Bates's sexual indiscretion toward female employees, particularly those who are not proficient in the English language. One such female employee of Russian heritage who was a "good employee, cashier" according to those working with her, was fired after refusing consensual sexual relations with Mr. Bates during her work shift.

12. Mr. Bates was not further investigated by HR and he was neither terminated from his job nor reprimanded for his actions. Mr. Bates continued to have sexual relations with female employees in the same basement where he was caught with subordinate female employee on June 14, 2009.

13. On June 18, 2009, and on a second occasion or about September 2009, Ms. Moore made a sexual harassment complaint in writing. Ms Moore's letters were never addressed by HR.

14. On June 30, 2009, Mr. Turgan spoke with Ms. Moore and when she again expressed concerns over the sexual harassment by Robert Bates. Turgan told her "I am aware of it." Although management knew of Mr. Bates's inappropriate behavior, Mr. Bates was never reprimanded.

15. Upon information and belief, Mr. Turgan was good friends with Mr. Bates and he told other employees that "after the dust [regarding the sexual harassment complaint] settled," he would ensure Ms. Moore would be written up and fired.

16. Ever since February 2009, when Ms. Moore refused Mr. Bates's sexual advances, he started retaliating against her. Bates intimidated her by using harsh and foul language particularly degrading towards women. He threatened to give her horrible evaluations. Mr. Bates threatened to fire her for minor mistakes which had never been a problem to him before or when someone else made them. Mr. Bates pounded her with insults and berated her in front of other employees and customers, which caused embarrassment and emotional hardship for Ms. Moore.

17. Mr. Bates was terminated from his job on or about September 2009 on matters of fraud unrelated to this cause of action.

18. About a month after Mr. Bates's termination, two new managers Demitra Britt and Calvin were transferred from other area Cosi stores to Cosi store #19 where Ms. Moore worked.

19. Ms. Britt created a hostile work environment for Ms. Moore. Ms. Britt and other managers created hostility in front of customers to embarrass Ms. Moore. On one such occasion, Mr. Turgan made an unpleasant remark about the shirt Ms. Moore was wearing in front of a customer while Ms. Moore was the cashier that day, and the customer acknowledged to Ms. Moore that Mr. Turgan's conduct was inappropriate. Ms. Britt often threatened to fire Ms. Moore. Ms. Britt created situations whereby Ms. Moore would seem to be acting inappropriately or even in violation of employment rules.

20. Ms. Moore received three consecutive write-ups leading to her termination. She was written up on September 22, 2009; October 20, 2009; November 6, 2009.

21. Ms. Moore was terminated from her job on December 29, 2009, because according to her immediate manager, Calvin, a customer had by an e-mail dated December 14, 2009, complained about her lack of customer service.

22. Ms. Moore examined the discharge paper and realized that the e-mail is clearly not referring to her. She was not the person who served the complaining customer, since she was not at the register at the time. In addition, the e-mail clearly criticizes the service of a male server. The e-mail states "the food was great, the gal checking me out – great, this guy was as unfriendly and unwelcoming as they come." The e-mail address belonged to one of Ms. Moore's regular and loyal out-of-state customers. Ms. Moore talked to this customer about the holidays and her children.

23. Two other male employees including Hassan were also terminated for the same e-mail without any investigation as to the truth of the matter.

24. Ms. Moore was never given an opportunity to explain or clarify how the e-mail has no relation to her service. On December 29, 2009, when Ms. Moore asked Mr. Turgan regarding the circumstances of his decision to terminate her, he told her to sign her discharge. When she refused, he told her to leave the store.

25. Ms. Moore suffers daily as a result of the constant sexual harassment she endured and the violent, sexually explicit, and abusive language used by her manager Mr. Bates.

26. Ms. Moore suffers from depression and anxiety, an extremely low crippling lack of self esteem, as well as physical problems such as nausea, headaches, and dizziness.

27. Ms. Moore has been unable to work. Ms. Moore participated in the Transitional Employment Program (TEP) which is funded by the D.C. Department of Employment Services.

28. Ms. Moore has been evicted from her home. All her belongings were discarded and confiscated by her landlord. Hence, Ms. Moore became homeless.

29. As a result of the Ms. Moore's termination and emotional distress, Ms. Moore's relationship with her young daughter suffered extreme and irreparable harm. Ms. Moore is incapable of caring for her daughter. Ms. Moore is unable to see her weeks at a time, who stays with her father.

30. Plaintiff has filed a timely administrative Charge with the Equal Employment Opportunity Commission ("EEOC") alleging wrongful discharge, discrimination, hostile work environment and retaliation. Exhibit 1.

31. More than 180 days have elapsed since filing of Plaintiff's charges. The EEOC has issued a Right to Sue Letter. Exhibit 2.

**Count I**

**HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT**

32.     Plaintiff restates and re-alleges the allegations appearing elsewhere in the Complaint as though fully stated herein.

33.    42 U.S.C. § 2000e-2(a) provides that it is an unlawful employment practice for an employer to "(1) discriminate against any individual with respect to his compensation, terms. Condition, or privileges of employment, because of such individual's ... sex ...; or (2) to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex."

34.    Ms. Moore is a member of a protected group, that is a woman.

35.    The defendant, by through its employees, managers and general mangers, violated Ms. Moore's rights under Title VII (42 U.S.C. § 2000e, et seq.), by engaging in actions and/or activities constituting hostile work environment, sexual harassment against Plaintiff.

36.    These violations by defendant were based on Ms. Moore's sex and affected the terms, conditions, and/or privileges of Ms. Moore's employment.

37.    As a direct and proximate result of the unlawful conduct of defendant, Ms. Moore has suffered, and will in the future suffer, great damages including front pay; back pay; medical expenses; loss of career opportunities, promotions and advancements; loss of retirement benefits; loss of fringe benefits; embarrassment; humiliation and inconvenience; severe mental anguish, stress; pain and suffering; loss of enjoyment of life and other non-pecuniary injury in amounts to be determined at trial.

38. In addition, Ms. Moore has incurred, and continues to accrue attorney's fees and other costs related to the prosecution of this action.

## Count II

## Quid Pro Quo Discrimination

39.    Ms. Moore restates and re-alleges the allegations appearing elsewhere in the Complaint as though fully stated herein.

40.    42 U.S.C. § 2000e-2(a) provides that it is an unlawful employment practice for an employer to "(1) discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...; or (2) to limit, segregate, or classify his employee ... in any way which would deprive to tend to deprive any individual or employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex".

41.    The defendant by and throught its employees violated Ms. Moore's rights under Title VII by engaging in actions and/or activities constituting quid pro quo sexual harassment.

42.    Ms. Moore has suffered tangible employment actions, resulting from her witnessing and rejection of General Manager's sexual harassment. These tangible employment actions consisted of the conduct outlined above, including suffering a substantial loss of income.

43.    These violations affected the terms, conditions, and/or privileges of Ms. Moore's employment, in violation of 42 U.S.C. § 2000e, et seq.

44.    As a direct and proximate result of the unlawful conduct of defendant, Ms. Moore has suffered, and will in the future suffer, great damages including front pay; back pay; medical expenses; loss of career opportunities, promotions and advancement; loss of retirement benefits; loss of fringe benefits; embarrassment, humiliation, and inconvenience; severe mental anguish, stress, and pain and suffering; loss enjoyment of life and other non-pecuniary injury, in amounts to be determined at trial.

45.    In addition, Ms. Moore has incurred, and continues to accrue, attorney's fees and other costs related to the prosecution of this action.

## Count III

## RETALIATION

46.    Ms. Moore restates and re-alleges the allegations appearing elsewhere in the Complaint as though fully stated herein.

47.    42 U.S.C. § 2000e-3 provides that it is an unlawful employment practice of an employer to "discriminate against any individual ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

48.     Defendant, by and through its employees, agents and officers, including supervisory employee intentionally, willfully, and wantonly retaliated against Ms. Moore because of Ms. Moore's complaints of the unlawful hostile work environment ,sexual harassment and/or quid pro quo discrimination, in that, after complaining of sexual harassment in violation of Title VII, Ms. Moore was subjected to unfair and arbitrary treatment, harassment, and interference with the terms, conditions and/or privileges of her employment subsequent to Ms. Moore formally complaining of the discriminatory and unlawful treatment of her by defendant.

49.     The actions and/or activities of defendant constitute retaliation for Ms. Moore's complaint of hostile work environment sexual harassment and/or quid pro quo discrimination, and are violation of Title VII of the 1964 Civil Rights Act.

50.     As a direct and proximate result of the unlawful retaliation by defendant, Ms. Moore has suffered, and will in the future suffer great damages including front pay; back pay; medical expenses; loss of career opportunities, promotion and advancements; loss of retirement benefits; loss of benefits; embarrassment, humiliation and inconvenience; severe mental anguish, stress and suffering; loss of enjoyment of life and other non-pecuniary injury in amounts to be determined at trial.

51.     In addition, Ms. Moore has incurred and continues to accrue attorney's fees and other costs related to the prosecution of this action.

**Count IV**

Page 14 of 21

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

52.    Ms. Moore restates and re-alleges the allegations appearing elsewhere in the Complaint as though fully stated herein.

53.    The General Manager, by his conduct described herein, intended to cause Ms. Moore severe emotional distress.

54.    The General Manager, intended his specific conduct and knew, or should have known that this conduct would likely likely result in severe emotional distress.

55.    The General Manager's conduct is outrageous and intolerable in that it offends generally accepted standards of decency and morality.

56.    As a direct and proximate result of the General Manager's conduct described herein, Ms. Moore has suffered and continues to suffer severe emotional distress, including but not limited to humiliation, embarrassment and indignity to her feelings all in an amount to be determined at time of trial.

### Count V

### BATTERY

57.    Ms. Moore restates and re-alleges the allegations appearing elsewhere in the Complaint as though fully stated herein.

58.    The General Manager did restrain Ms. Moore against her will when he grabbed her.

59.    The General Manager restrained her against her will when he tried to talk to her about her undergarments (clothing) and was blocking her way to move away form him.

60.    The General Manager caused Ms. Moore to be retrained against her will.

61.    The General Manager acts were intended to restrain Ms. Moore and such touching was both harmful and offensive to Ms. Moore.

62.  The General Manager's acts were both the actual and proximate cause of Ms. Moore's injury and damages.

### Count VI
### ASSAULT

63.    Ms. Moore restates and re-alleges the allegations appearing elsewhere in the Complaint as though fully stated herein.

64.    The General Manager retrained Ms. Moore against her will and purposefully, knowingly, recklessly, and wrongfully touched and manhandled Ms. Moore by trying to be close to her body and by approaching her in a manner calculated to cause reasonable apprehension of bodily harm.

65.    The General Manager caused Ms. Moore to be touched against her will.

66.    The General Manager's acts were intended to restrain and harm Ms. Moore and such touching and threatening behavior was both harmful and offensive to Ms. Moore.

67.    The conduct of the General Manager caused Ms. Moore to be in reasonable apprehension of offensive conduct and thereby constituted an assault.

### Count VII

### WRONGFUL DISCHARGE AND WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

68.    Ms. Moore restates and re-alleges the allegations appearing elsewhere in the Complaint as though fully stated herein.

69.    Plaintiff was employed from April 2004, hired by Cosi store #19 in Clarendon-Courthouse in Arlington, Virginia as an oven line baker, but was promoted several times - until December 2009, when she was fired from her job. One implied term of plaintiff's contract of employment with defendant was that she would not be asked or required to violate Virginia public policy as expressed in Virginia Code § 18.2-344 and Virginia Code § 18.2-345, criminalizing fornication and lewd and lascivious conduct. Another implied term of her employment was that she would not be assaulted, battered, or molested by members of management in the workplace. Another implied term of her employment was that she would not

be assaulted, battered or molested by members of management in the workplace. Another implied term of her contract was that she would not be discharged from her employment in violation of the public policy of the Commonwealth of Virginia, nor otherwise wrongfully discharged. Another implied term of her contract was although an employee at will, she ould not be terminated without reasonable notice.

70.    At all times alleged herein, the plaintiff performed her duties as an employee in a reasonable manner, loyal, dedicated and satisfactory.

71.    The plaintiff's discharge by her employer was wrongful, because it also was in violation of the public policy of the Commonwealth of Virginia, in that the plaintiff was discharged because she refused to commit the crimes, in violation of Virginia's public policy as expressed in its criminal status, criminalizing fornication and lewd and lascivious conduct (Virginia Code §§ 18.2-344 and 18.2-345). The discharge was also wrongful in that it was effected with no notice whatever.

72.    Said wrongful discharge and discharge in violation of public policy caused damage to the plaintiff.

## Count VIII

## Breach of Employment Contract

73.    On or about *April 2004*, plaintiff and defendant entered into an employment contract of indefinite duration under which plaintiff agreed to work.

74.    At the time the parties entered the contract, Defendant's agent orally assured plaintiff that she would have job security and that it was Defendant's policy to discharge employees only for just cause.

75.    On or about *February 2009*, Defendant distributed copies of its Personnel Policy Manual to employees, including Plaintiff.

76.    Defendant's Manual promised that employees would be discharged only for good cause, and only in accordance with discharge procedures set out in the Manual.

77.    Plaintiff was aware of the Defendant's policies set out in the Manual, and continued to work for Defendant in reliance on Defendant's promises concerning job security.

78.    On or about *December 29, 2009*, Defendant discharged Plaintiff from employment *without following termination procedures promised in the Personnel Policy Manual and/or without cause*, thereby breaching the contract of employment.

79.    As a result of Defendant's wrongful discharge of plaintiff in breach of the employment contract, plaintiff has lost earnings in the amount of and has incurred expenses in the amount of in seeking other employment.

80.    Defendant should reasonably have expected Plaintiff to rely on its promises of job security, and is therefore estopped from denying their enforceability.  Plaintiff prays for judgment against Defendant as follows:

1. Lost earnings;

2. Incidental expenses incurred while seeking other employment;

3. Such other relief as the court deems just and proper.

### Prayer for Relief

WHEREFORE, plaintiff, Catherine Moore prays that this Court enter judgment in her favor and against the defendant on the above counts, and further:

A.    Award on Counts One, Two and Three judgment in favor of Ms. Moore and against the defendant, Cosi Inc. for all relief available under Title VII of the Civil Rights Act of 1964, as amended, including but not limited to back pay, plus compensatory general damages, but front pay in the amount of $300,000 and her attorney fees and costs in this action, including expert fees, pursuant to 42 U.S.C. §2000e-5(k) together with interest; and

B.    On her common law counts (IV, V, VI) for intentional infliction of emotional distress, assault and battery, plaintiff prays for an award of five hundred thousand plus interest.

## JURY DEMAND

Trial by jury is demanded.

Dated: November 1, 2011

Respectfully submitted

S. Sarah Shah, Esq.
3 Washington Circle NW
Suite 102
Washington DC 20037
Counsel for Plaintiff